Good morning, may it please the court. Katrina Lavery and Tommy Dew, certified law students under the supervision of Erwin Chemerinsky, for Petitioner George Mitchell. I will address Mr. Mitchell's equal protection argument and Mr. Dew will address the 14th Amendment liberty interest and 11th Amendment arguments. We will both discuss qualified immunity and we While civilly committed by the State of Washington, Mr. Mitchell was denied hepatitis C treatment, at least in part because of his race, and this is undisputed. This was in clear contradiction to the medical practice guidelines which Mr. Mitchell provided to the district court, and for this reason, this court should reverse summary judgment. Because the defendants concede that they considered race at least in part in this decision, strict scrutiny must apply. And therefore, under Arlington Heights, the burden then shifts to the defendants to establish that either the use of race was narrowly tailored to meet a compelling government interest Certainly that's what the usual treatment is when the decision is based at least partially on race. But the use of race here is much different than all those other cases that I'm familiar with. Are there any precedents that speak to a differentiation based on medical diagnosis and history as opposed to animus toward a particular racial group? No, Your Honor. However, the cases are clear that strict scrutiny applies even when the distinction based on race is not based on scrutiny. Well, why should it? If there's no animus involved, why should we draw the inferences that lead us to a strict scrutiny standard? Your Honor, strict scrutiny applies even when the distinction based on race is based on benign or well-intentioned reasons, and the law is clear on that. Well, what do we make of the fact that it's a medically established fact that the requested treatment has a lower success rate in African Americans? It's a fact. Isn't that correct? Your Honor, that's correct. That is a fact. However, the difference in success of the treatment is only about 20%, and in this case there's no alternative treatment available. Denying this treatment means there's no other treatment. And the medical practice guidelines, which Mr. Mitchell provided and put into the record, state that despite this 20% difference in success rate, the treatment for African American patients should not differ from the treatment of Caucasian patients. But it still leaves room for professional medical judgment in individual cases, right? You see, that's a problem that I have, too, that Judge Clifton referred to, is that this is not really like any case I've seen where race is considered a factor in the response of the governmental actor. Your Honor, two points to respond to that. First, in this case, we should not simply defer to Dr. Bell's professional judgment on this decision. Per Sharpe v. Weston, professional deference is not warranted when the professional substantially departs from professional standards, and here Dr. Bell did the exact opposite of what the standards state. There's individual judgment to be made, though, and you have standards, but in this case there's evidence that the concern of any medical professional needs to be upon the side effects or the negative effects of any course of treatment. In this case, the professional judgment made by the doctor is that the prospect of success from this treatment does not outweigh the downsides. Now, there may be standards that apply generally, but when you're dealing with a particular patient, isn't there room for the exercise of professional judgment? Your Honor, in this case, we don't know how much Dr. Bell considered Mr. Mitchell's race in making that decision, and when the standards state that race should not be considered, when the difference in success rate is only 20%, and when in the meeting between the patient, Mr. Mitchell, and the doctor, the doctor simply said, I'm not recommending you for this treatment. It doesn't work on African Americans, which is incorrect. It does work, just not quite the way. It didn't work on him. He actually had this treatment. It didn't work on him, did it? That's correct. He had the treatment in 2012, about six months after he filed this lawsuit. Let me ask you another question. The fact that he's already had the treatment, which is, you know, wanting the treatment is the reason he filed the lawsuit. Is it now moot because he's had the treatments proved unsuccessful? No, Your Honor. What does he have to gain by the suit now? Your Honor, no, it's not moot. He is still seeking damages for the delay of three years. So what's his injury? Yeah, well, since it didn't work, what's the injury? The injury is that it could have worked if he had had it earlier. As my colleague will discuss in greater detail, the success of the treatment decreases dramatically with age, particularly when patients approach the age of 60, which is Mr. Mitchell's age. And also, he's requesting injunctive relief that if he wants to attempt treatment again in the future, that he will receive the constitutional standard of care. Well, what if he wants an injunction allowing him to do this treatment again when it's already been demonstrated the treatment doesn't work? How does that flow? And he's older. He is older. However, treatments for hepatitis C are constantly improving. We don't know what treatments will be available in the future. Well, that's a different treatment than the one you're talking about now, then. Yes, Your Honor. However, he could also repeat this treatment. Why would he want to? Patients do attempt to repeat the treatment if it was not successful the first time, so he could pursue that option in the future. Finally, Your Honors, just because this is in a medical context does not mean that strict scrutiny does not apply. Strict scrutiny applies when the use of race is used in a so-called neutral way, in a so-called benign way, and the law is clear on that. At this time, I would like to turn to my co-counsel. Good morning, and may it please the Court. Because Mr. Mitchell is civilly committed, the issue is over whether or not the defendants violated the professional judgment standard. Now, Mr. Mitchell has provided tribal issues of fact as to how the defendants violated his right to reasonably safe conditions of confinement.  Mr. Mitchell provided adequate medical evidence in 2009 that showed that he required treatment. Mr. Mitchell provided evidence that his age, the amount of hepatitis C virus in his body, and the amount of liver damage required treatment in 2009. Mr. Mitchell provided evidence at the summary judgment portion that made it clear that for patients approaching the age of 60, the treatment for it could be too difficult for a patient to survive the treatment. Moreover, for patients 65 and older, the side effects of the treatment could be too harsh for those patients to even have treatment. Was there any evidence that the treatment's less effective, leaving aside the side effects, that the treatment itself was less effective? No, Your Honor. If there's not, then don't we have no harm, no foul? He had the treatment. It didn't work. That is correct, Your Honor. The treatment did not work. But we don't know whether or not the treatment would have worked in 2009. You just told me that there was no evidence with regard to the efficiency or efficacy of the treatment. There may have been evidence about greater side effects as you got older, but no evidence about the treatment being less effective. So why should we speculate that the treatment would have worked two years before, only it didn't work then? The reason why most patients fail the treatment isn't because the success rate changes. The reason why they fail is because they grow older and it is more difficult to complete the treatment. When Mr. Mitchell received the treatment in 2012, he wasn't able to complete the treatment because of the side effects. Well, let me just ask this question. What factors should we use to determine whether denying this specific treatment is inadequate medical care? Particularly, it seems to me that your argument glosses over the apparent toxicity of the treatment and that with an individualized assessment as to whether it should be given, why shouldn't we go with what the doctor says? What are the factors that we consider when we're trying to decide was the treatment adequate? Sure, Your Honor. There are two responses. First, we look to whether or not the defendants deviated from professional judgment. Here, the reason why the defendants deviated from professional judgment is because they failed to provide Mr. Mitchell to see a gastrointestinal specialist. Now, there is evidence in the record to suggest that the defendants were not adequate enough to treat Mr. Mitchell in 2009 or when he was treated in 2012. Now, when Mr. Mitchell was treated in 2012, first, they failed to provide him with an adequate dosage of Ribavirin. That may be the reason why he failed treatment in 2012. Moreover, from 2009 to 2012, the evidence is clear that the amount of hepatitis C virus in Mr. Mitchell's body increased. The more hepatitis C virus there is in a person's system, the longer it takes for a person to be treated. Moreover, prior to 2009, the defendants always recommended that Mr. Mitchell see a gastrointestinal specialist, particularly because of his hepatitis C and because of the damage to his liver. This shows that in 2009, when the defendants deviated from this decision to treat Mr. Mitchell and decided to treat Mr. Mitchell themselves instead of referring him to a specialist, they violated his constitutional rights because they weren't adequate enough to treat him or diagnose Mr. Mitchell in 2009. Let's assume we agree with you that his constitutional rights were violated or could have been violated. Of course, the defendants are claiming they're entitled to qualified immunity. This is a very close question, I think, both legally and medically. On the legal side, there's really no case like this that holds any medical officer or prison official liable, is there? So there's nothing to tell the defendants here that what they did was not constitutional. Your Honor, there is case on point to hold the defendants liable, overcoming qualified immunity. The Supreme Court in Erickson v. Partis explained that for patients with hepatitis C treatment, the failure to provide them with treatment can constitute deliberate indifference when they know that the patient needs hepatitis C treatment but fail to provide it because hepatitis C can endanger a person's life. Moreover, there is case on point discussing that, especially in the Ninth Circuit, that the defendants must be adequate enough and competent to diagnose a patient like Mr. Mitchell. They certainly can provide him with treatment, but when they're not sufficient and when they're not competent to diagnose and treat him, that's a violation of constitutional rights. What authority says an M.D. is not competent to diagnose and treat? Your Honor, there are case law on point, I don't have it in front of me right now, that discusses that even though the person is a doctor, that doesn't make them sufficient to treat certain conditions. Especially here, when the defendants constantly refer Mr. Mitchell to a specialist, they needed to be competent enough to diagnose and treat him. In this case, they weren't. They failed to provide him with the adequate dose. Actually, they were right, or he was right, or she was right. I've forgotten the gender of the doctor. The treatment, when it was tried, didn't work because of side effects, apparently. And the concern was expressed, that one of the reasons for not doing this, if the prospects for success are not great, is that the side effects are substantial. It turned out, when the treatment was tried, that's what happened. So how do we draw from that an inference that the M.D. was not competent? In response to that, Your Honor, first, whether or not Mr. Mitchell was provided treatment in 2012 as opposed to 2009, does not matter because we don't know whether or not the treatment would have worked in 2009. The doctor who stated that it wouldn't have worked in 2009 because it failed in 2012 was Dr. Seisberg. And Dr. Seisberg is a doctor in psychiatry, not a gastrointestinal specialist, or a doctor that generally sees patients for diseases. Secondly, the medical evidence clearly shows that between 2009 and 2012, the amount of hepatitis C virus in Mr. Mitchell's body increased. So we don't know whether or not the delay in treatment actually is the reason why Mr. Mitchell failed treatment in 2012. This creates a triable issue of fact for the lower court to determine whether or not this delay in treatment caused Mr. Mitchell substantial harm to the point where he failed treatment in 2012. At this time, I would like to reserve the rest of my time for rebuttal. You may do so. And we'll hear from defendants. Good morning. May it please the court. My name is Grace O'Connor from the Washington State Attorney General's Office, and I represent the defendants Dr. Thomas Bell and Mr. Kelly Cunningham. And joining me at council table is Assistant Attorney General Allison Zipp. Today I'd like to cover three primary topics. First, Mr. Mitchell's equal protection claim. Second, his claims about whether the treatment decisions made by Dr. Bell fell below the 14th Amendment guarantee to professionally sound medical treatment. And third, I'd like to talk about qualified immunity. I'll turn first to Mr. Mitchell's equal protection claim. Dr. Bell's decision that interferon and ribavirin treatment was not medically necessary in 2009 was an appropriate balancing of factors related to Mr. Mitchell's individualized medical status. Why isn't the fact that Dr. Bell considered race-based success not an express classification for treatment on the basis of race? Dr. Bell considered Mr. Mitchell's liver functioning first and foremost. Mr. Mitchell was asymptomatic in May of 2009. He did not need the treatment. When that was balanced against the toxicity of the treatment and the fact that the likelihood of success was low, which had a racial correlation, Dr. Bell came to the decision that the treatment was not medically necessary in 2009. Do you think the fact that race was mentioned triggers strict scrutiny? No, Your Honor. There's no racial classification here. Mr. Mitchell in his depositions shared that other African Americans with this genotype of hepatitis C at the SEC are receiving this treatment. So there doesn't appear to be any racial classification here triggering strict scrutiny. Well, what are you saying? In cases that have a racial component, it's only when there's a racial classification that strict scrutiny is triggered? I'm saying there's no racial classification here that triggers strict scrutiny. So consideration of race is different from classification by race? Is that what you're saying? Well, in this case, the consideration of race was a racial correlation in terms of a medical fact that Dr. Bell took into account, and it is true there is no case law, I think Judge Clifton pointed out, saying that it's an equal protection violation for doctors to consider racially correlated medical facts in rendering decisions. So what do you do with the guidelines or recommendations or what's the term? The management standards approved by the College of Gastroenterology that say African Americans shouldn't be treated differently. Well, Your Honor, I think when we look at that medical literature, what it says is that if a candidate is a good candidate for the treatment, then their treatment shouldn't depend on the fact that they're African American. But here, Mr. Mitchell was healthy in May of 2009. He was asymptomatic. There was no reason to give him this highly toxic treatment, especially when compared to the likelihood of success. Turning to Mr. Mitchell's argument that Dr. Bell's decision here was not exercised with sound professional judgment, for the reasons that I just discussed, Dr. Bell's decision fell well within the standards of sound professional judgment. Mr. Mitchell's provided no competent medical evidence that Dr. Bell substantially departed from professional judgment here. What about the lack of a gastrointestinal, a gastro... Whatever those people are called. Yes. That this doctor was a psychiatrist. Well, Dr. Bell is a medical doctor. He is an M.D., and at the time he was the medical director of the SEC. He was competent to treat Mr. Mitchell for hepatitis C. In the past, Mr. Mitchell had been referred out to a consulting doctor, Dr. Preby. But all Dr. Preby ever said in his chart notes was that, you know, Mr. Mitchell appears to be a good candidate to go through the steps to determine whether or not treatment would be appropriate at this time. And he also said in his chart notes that ultimately the decision would be left up to the SEC doctors. And ultimately the decision would be left up to the SEC doctors. They are competent to make these kinds of decisions. By the way, you agree, I think I forgot which one of the counsel for plaintiff made it, but you agree with their position that this case is not moot because there's still the damage claim? We believe that there's no harm, no foul in this case, as Judge Clifton said. The delay in the treatment, there's no medical evidence showing that the delay in the treatment was what led to Mr. Mitchell not successfully completing treatment in 2012. He was 57 years old in 2012 when he received the treatment, and I've heard a couple of different ages about at which time the treatment is no longer effective, but he wasn't there yet in any case. Well, you think the injunctive claim is moot because he's had the treatment now? Yes, the injunctive claim is moot. Well, what about, ladies, have your thoughts on qualified immunity? Your Honor, qualified immunity does apply here. As I've discussed, there's no constitutional violation here under either the Equal Protection Clause or the 14th Amendment's guarantee to safe and secure conditions of confinement. But perhaps more importantly, there's no clearly established right here. It's Mr. Mitchell's burden to bring forth case law showing that there's a particularized right, a clearly established right has to be something more than a generalized constitutional right, and he hasn't shown that Dr. Bell was on notice that he had to ignore medical facts and that he had to ignore the patient standing in front of him in rendering his decision. If there are no more questions, I'll close. The weighing of medical facts relevant to a particular patient's individualized medical prognosis is the definition of sound professional judgment. There's no genuine issue of material fact here disputing the district court's conclusion that Dr. Bell rendered constitutionally sound medical care. This court should affirm the district court's grant of summary judgment in favor of the defendants. Thank you. Thank you. We'll hear rebuttal. In this case, Mr. Mitchell received no treatment whatsoever after the defendants denied him treatment in 2009. The fact that he was asymptomatic in 2009 should not matter because the Supreme Court in Helling v. McKinney provided, in order to overcome qualified immunity and to establish that there is serious harm, the plaintiff needs to only show that there is a potential for harm, not that he was suffering harm at the time. The Supreme Court has also held that the failure to provide hepatitis C treatment is adequate enough to show harm. Can, not necessarily has to. That is correct, Your Honor. In this case, Mr. Mitchell has provided sufficient evidence to overcome the summary judgment and create a tribal issue of fact. What evidence that the treatment would have given him benefit at the time when, in fact, it didn't a couple of years later? We do know that the reason why he could have failed in 2012 is due to the lack of dosage the defendants provided him. The medical guidelines and the specialists recommended that Mr. Mitchell be provided with 1,200 milligrams of ribavirin. He was only provided with 800 milligrams, far short of what he actually needed to complete the program. But too much for him to be able to tolerate because of the side effects. We do not know that, Your Honor, at this point. Do we know anything to the contrary? We do not, Your Honor. You're stuck with playing the cards you're dealt, but I have trouble, I look at the record, I have trouble finding evidence that supports the proposition. Your Honor, based on what the specialists recommended in 2009 and again in 2012, for patients with Mr. Mitchell's profile, he should have been provided with 1,200 milligrams in order for him to succeed with the treatment. We know that he wasn't provided with that treatment, and we know that that's a tribal issue to determine whether or not that's the reason why he failed. Secondly, Mr. Mitchell should have the jury decide whether or not the delay was harmful. It's not for the court to decide whether or not there is no harm, no foul. This is a tribal issue for the jury, and the jury should be able to determine whether or not the fact that Mr. Mitchell received no treatment in 2009 caused him harm. Thank you. Thank you. We thank all counsel for your helpful arguments. Repeating what I said a few minutes ago, we thank specifically the law school and Dean Chemerinsky for taking the case through our pro bono program. All of your students have done you proud.
judges: Nelson, Tashima, Clifton